Slip Op. 10-83

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ALLIED PACIFIC FOOD (DALIAN) CO. LTD., ALLIED PACIFIC (H.K.) CO., LTD., KING ROYAL INVESTMENTS, LTD., ALLIED PACIFIC AQUATIC PRODUCTS (ZHANJIANG) CO. LTD., and ALLIED PACIFIC AQUATIC PRODUCTS (ZHONGSHAN) CO. LTD.,** | |
| Plaintiffs, | **Before:  Timothy C. Stanceu, Judge** |
| v. | **Consol. Court No. 05-00056** |
| **UNITED STATES,** | |
| Defendant. | |

## <u>OPINION</u>

[Affirming decision upon remand in which the United States Department of Commerce redetermined surrogate values for raw shrimp and labor in an antidumping investigation]

Dated: July 29, 2010

*Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP* (*Bruce M. Mitchell* and *Mark E. Pardo*) for plaintiffs Allied Pacific Food (Dalian) Co. Ltd., Allied Pacific (H.K.) Co., Ltd., King Royal Investments, Ltd., Allied Pacific Aquatic Products (Zhanjiang) Co. Ltd., and Allied Pacific Aquatic Products (Zhongshan) Co. Ltd.

*Akin Gump Strauss Hauer & Feld LLP* (*Warren E. Connelly*, *Lisa-Marie W. Ross*, and *Margaret C. Marsh*) for plaintiff Yelin Enterprise Co., Hong Kong.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Stephen C. Tosini*); *Mykhaylo A. Gryzlov*, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

Stanceu, Judge: This case arose from plaintiffs' contesting the final less-than-fair-value

determination ("Final Determination") and amended final less-than-fair-value determination

("Amended Final Determination") that the International Trade Administration, United States

Department of Commerce ("Commerce" or the "Department"), issued in an antidumping duty

investigation on certain frozen shrimp from the People's Republic of China ("China" or the

"PRC").  *Allied Pacific Food (Dalian) Co. v. United States*, 32 CIT __, __, 587 F. Supp.

2d 1330, 1333-34 (2008) ("*Allied Pacific II*").  At issue in the litigation are the Department's

surrogate values for two inputs–raw, head-on, shell-on shrimp and hours of labor–used in the

production of the subject merchandise.  *Id.*  Before the court are the Final Results of

Redetermination Pursuant to Court Remand (May 21, 2009) ("Second Remand

Redetermination"), which Commerce issued in response to the court's order in *Allied Pacific II*,

32 CIT at __, 587 F. Supp. 2d at 1363.  In *Allied Pacific II*, the court rejected, for various

reasons, the Department's first redetermination upon remand.  *Id.* at __, 587 F. Supp. 2d

at 1362-63; *see* Final Results of Redetermination Pursuant to Ct. Remand (Oct. 27, 2006) ("First

Remand Redetermination").

Plaintiffs Allied Pacific Food (Dalian) Co. Ltd., Allied Pacific (H.K.) Co., Ltd., King

Royal Investments, Ltd., Allied Pacific Aquatic Products (Zhanjiang) Co. Ltd., and Allied Pacific

Aquatic Products (Zhongshan) Co. Ltd. (collectively "Allied Pacific") and Yelin Enterprise Co.,

Hong Kong ("Yelin"), are Chinese producers of subject shrimp that were respondents in the

antidumping duty investigation.  Allied Pacific Summons 1; Yelin Summons 1.  Both plaintiffs

seek a third remand for redetermination of the surrogate values for raw shrimp.  Allied Pacific's

Comments in Resp. to the Dep't's Second Remand Determination 3 ("Allied Pacific

Comments"); Comments of Yelin Enterprise Co., Hong Kong ("Yelin") on the Second Remand

Determination of the Dep't of Commerce 3-4 ("Yelin Comments").  Neither plaintiff comments

on the Department's redetermined labor rate.  *See* Allied Pacific Comments; Yelin Comments.

The court affirms the Second Remand Redetermination.  Rejecting plaintiffs' arguments

for a third remand on the issue of surrogate values for raw shrimp, the court concludes that

Commerce's redetermined values for this input comply with the court's order in *Allied Pacific II*,

32 CIT at __, 587 F. Supp. 2d at 1363, and are in accordance with law.  The court affirms the

Department's redetermined surrogate value for hours of labor because no party objects to that

determination.

## I. BACKGROUND

The background of this case is presented in the court's opinions in *Allied Pacific Food*

*(Dalian) Co. v. United States*, 30 CIT 736, 738-51, 435 F. Supp. 2d 1295, 1298-1308 (2006)

("*Allied Pacific I*"), and *Allied Pacific II*, 32 CIT at __, 587 F. Supp. 2d at 1335-41, and is

supplemented herein to recount developments occurring since *Allied Pacific II* was decided on

December 22, 2008.  In *Allied Pacific II*, the court rejected Commerce's redetermined surrogate

values for the raw shrimp input and for the labor rate and ordered Commerce to redetermine

these surrogate values.  *Allied Pacific II*, 32 CIT at __, 587 F. Supp. 2d at 1362-63.

After the court's decision in *Allied Pacific II*, Commerce invited parties to submit for the

record new information relevant to its determining a new surrogate value for labor.  Second

Remand Redetermination 14.  On January 30, 2009, Allied Pacific submitted information on

2005 wage rates in India, the country Commerce chose during the investigation as the surrogate

country for valuing all factors of production other than labor.  *Letter from Grunfeld, Desiderio,*

*Lebowitz, Silverman & Klestadt LLP to Sec'y of Commerce* 2-3 (Jan. 30, 2009) (Second Remand

Admin. R. Doc. No. 5) ("*Allied Pacific Labor Rate Submission*").  Allied Pacific's information

came from a report produced by Centre for Social Research ("CSR") in New Delhi, India in

collaboration with the United Nations Conference on Trade and Development.  *Id.* at 2.  Already

on the record were country-wide labor rates published in Chapter 5B of the Yearbook of Labour

Statistics for multiple countries issued by the International Labour Organization ("ILO").  *See*

Second Remand Redetermination 14.  Commerce did not obtain any other information for

possible use in determining a surrogate value for labor.  *See id.*

Commerce issued a draft remand redetermination on April 10, 2009.  Second Remand

Redetermination 3; *see Letter from U.S. Dep't of Commerce to Akin, Gump, Strauss, Hauer &*

*Feld, LLP* (Apr. 10, 2009) (Second Remand Admin. R. Doc. No. 6) (providing Yelin with the

draft of the second remand redetermination).  On April 24, 2009, Allied Pacific and Yelin

provided comments on the draft to the Department, addressing the raw shrimp issue but not the

labor rate issue.  *See* Second Remand Redetermination 3.  In its Second Remand

Redetermination, submitted to the court on May 21, 2009, Commerce calculated new surrogate

values for shrimp using ranged data from the Indian shrimp producer Devi Seafoods, Ltd.

("Devi") and adopted a new surrogate labor rate of $0.05 per hour.  *Id.* at 3.  Commerce

determined revised antidumping duty margins of 5.07% for Allied Pacific and 8.45% for Yelin.

*Id.* at 37.  In their comments to the court on the Remand Redetermination, plaintiffs again

address only the issue of surrogate values for shrimp.  *See* Allied Pacific Comments; Yelin

Comments.

In response to a motion by plaintiffs, the court held oral argument on December 3, 2009.

Order, Oct. 8, 2009; Pls.' Partial Consent Mot. for Oral Argument Regarding 2nd Remand

Redetermination.  Upon plaintiffs' motion made at oral argument, the court allowed a joint post-

hearing submission by plaintiffs, which was filed on December 14, 2009 and a response of

defendant, filed January 6, 2010.  Pls.' Post-Argument Comments ("Pls. Post-Argument

Submission"); Def.'s Resp. to Pls.' Post Hearing Br. ("Def. Post-Argument Submission").

## II. Discussion

Under the applicable standard of review, the Department's Second Remand

Redetermination must be held unlawful if found to be unsupported by substantial evidence on the

record or otherwise not in accordance with law.  *See* 19 U.S.C. § 1516a(b)(1)(B)(i) (2000);

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (stating that substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

A.  Commerce's Choice of Surrogate Values for Raw, Head-On, Shell-On Shrimp Is Affirmed

Commerce used data on the cost of shrimp presented in the financial statement of an

Indian producer, Nekkanti Seafoods Ltd. ("Nekkanti") to determine surrogate values for raw

shrimp, not only in the investigation but also in the First Remand Redetermination.  First

Remand Redetermination 5-7; *Issues & Decision Mem. for the Antidumping Duty Investigation*

*of Certain Frozen & Canned Warmwater Shrimp from the People's Republic of China* 12-16

(Nov. 29, 2004) ("*Decision Mem.*").[1]  In *Allied Pacific II*, the court rejected the Department's

finding in the First Remand Redetermination that the Nekkanti financial statement data were the

best available information on the record for valuation of the raw shrimp input.  *Allied Pacific II*,

32 CIT at __, 587 F. Supp. 2d at 1362.

---

[1] *See Notice of Am. Final Determination of Sales at Less Than Fair Value & Antidumping
Duty Order: Certain Frozen Warmwater Shrimp From the People's Republic of China*, 70 Fed.
Reg. 5149 (Feb. 1, 2005) ("*Am. Final Determination & Order*"); *Notice of Final Determination
of Sales at Less Than Fair Value: Certain Frozen & Canned Warmwater Shrimp From the
People's Republic of China*, 69 Fed. Reg. 70,997 (Dec. 8, 2004) ("*Final Determination*").

In the Second Remand Redetermination, Commerce considered four alternative sets of data that were on the record of the investigation: data from the Seafood Exporters Association of India ("SEAI"), data from the Aquaculture Certification Council ("ACC"), and ranged, public versions of sets of data submitted by two respondents in the parallel antidumping investigation of shrimp from India, Devi and Nekkanti.  Second Remand Redetermination 4.  Commerce reiterated in the Second Remand Redetermination its five criteria for judging surrogate data, stating that it "prefers to use surrogate values that are publicly available, broad market averages, contemporaneous with the POI [*i.e.*, period of investigation], specific to the input in question, and exclusive of taxes and exports."  *Id.* at 7 (citation omitted).  From among the four data sets, Commerce determined that the Devi ranged data were the best available information on the record.  *Id.* at 6-7.  Commerce concluded that the Devi ranged data were superior to the SEAI data because, among other reasons, the Devi ranged data were more specific to the input, *id.* at 8-12; that the ACC data "suffered from fundamental problems that called into question the representativeness and reliability of its prices"; and, because of issues pertaining to ranging, "that the Nekkanti ranged data were potentially less accurate than the Devi ranged data."  *Id.* at 6.  The court concludes that substantial record evidence supports all of these findings by the Department.

Commerce found in the First Remand Redetermination that the ACC's posting of prices was a one-time event and that the ACC was not organized for the purpose of, nor engaged in the practice of, posting such prices.  First Remand Redetermination 29-31.  On the question of the Department's rejection of the ACC data, the court previously held that "[s]ubstantial record evidence supports the findings that the ACC price data were not regularly posted in that posting of such prices was not a routine ACC function."  *Allied Pacific II*, 32 CIT at __, 587 F. Supp. 2d

at 1350.  In the First Remand Redetermination, the Department relied on these findings in

concluding that the ACC data were not sufficiently insulated from conflict of interest.  *See id.*

("On remand, Commerce again identified insulation from conflict of interest as a reason for

rejecting the ACC data, finding that some of the ACC members were respondents in the parallel

Indian investigation and that the ACC prices were posted only after publication of the

Preliminary Determination on June 16, 2004.").  These findings, which are restated in the Second

Remand Redetermination, support the Department's decision to consider the ACC data

insufficiently reliable for use in determining a surrogate value for raw shrimp.  *See* Second

Remand Redetermination 12-13.  As the court stated in *Allied Pacific II*, "[i]t is within the

Department's discretion to give weight to these two findings in its evaluation of the various data

sets." *Allied Pacific II*, 32 CIT at __, 587 F. Supp. 2d at 1350; *see* Second Remand

Redetermination 12-13.  Commerce's decision to reject the ACC data on grounds of insufficient

reliability is based on findings supported by substantial record evidence and on adequate

reasoning.

   In support of its selection of the Devi ranged data over the Nekkanti ranged data, the

Department cited the court's conclusion in *Allied Pacific II* that the Nekkanti ranged data,

"'unlike [the] Devi ranged data, do not include a unit price for each count size and are presented

in a format indicating that the count sizes are ranged.'"  Second Remand Redetermination 4 n.1

(quoting *Allied Pacific II*, 32 CIT at __, 587 F. Supp. 2d at 1349).  The court concludes that

Commerce, in the Second Remand Redetermination, relied on findings supported by substantial

record evidence in concluding that the Devi ranged data are superior to the Nekkanti ranged data.

In choosing the Devi ranged data over the SEAI data, the Department placed substantial weight on its "specificity" factor, emphasizing the importance of data that may be correlated satisfactorily to the count sizes reported by Allied Pacific and Yelin. *See* Second Remand Redetermination 8-9, 22-23, 32. Commerce concluded, and the record amply supports, that "[t]he value of shrimp is highly dependent on the count-size (the larger shrimp is worth significantly more in the marketplace)." *Id.* at 8. Noting that the Devi ranged data list per-unit prices for individual sizes and that the SEAI data provide information only for count sizes ending in zero, *e.g.*, 20, 30, 40 pieces to the kilogram, etc., Commerce concluded that it could correlate the Devi ranged data more readily to the count sizes reported by Allied Pacific and Yelin. *Id.* at 8, 11. Commerce found, specifically, that the ranged Devi data corresponded to all of the count sizes reported by Allied Pacific and 30 of the 33 count sizes reported by Yelin. *Id.* at 23. Commerce reasoned that "the Devi ranged data are the only source that provides single data points for the bottom and top ranges of each count size[,] making the calculation of the surrogate value more accurate." *Id.* at 8. The Second Remand Redetermination provides as an example an Allied Pacific count size of "43/47" for which "the raw shrimp input had a lower range of 43 and an upper range of 47," adding that "[t]he Devi data list per-unit prices for individual sizes such as 43, 44, 45, 46, and 47." *Id.* Commerce explained that "in calculating the surrogate value for Allied's 43/47 count size, the Department need only include prices for specific count-sizes between 43-47" and that "[t]he same methodology applies for Yelin's count sizes." *Id.* Commerce viewed the SEAI data less favorably not only because the SEAI data are presented in count sizes rounded to tens, but also because the SEAI data list count sizes only up to 100 per kilogram. *Id.* at 23. Commerce considered the latter limitation significant because "Yelin and

Allied both reported count sizes well beyond count sizes of 100 pieces per kilogram." *Id.* "For

Yelin, for example, this would mean that for a total of 13 of its 33 count sizes, or 39% of count

sizes, there would be no matching count size from SEAI." *Id.*

The court affirms, as supported by substantial record evidence, Commerce's finding that

the Devi ranged data afford a more accurate correlation to the count sizes reported by Allied

Pacific and Yelin than the SEAI data and thus are superior to the SEAI data in that respect.

Although Commerce's using the Devi ranged data necessarily required some estimation, the

SEAI data require substantially more estimating because they are less revealing with respect to

count size and require extrapolation due to the lack of any information on count sizes exceeding

100.  The record evidence supports Commerce's general conclusion that the SEAI data have

significant shortcomings with respect to count size.  It was permissible for Commerce to

conclude, based on the record evidence, that these shortcomings would compromise the overall

accuracy of the surrogate values determined for the specific count sizes reported by Allied Pacific

and Yelin and that these shortcomings are largely avoided by use of the Devi ranged data.

Because the count size of shrimp is unquestionably an important consideration,

Commerce reasonably placed more weight on its specificity criterion than on its four other

criteria.[2]  With respect to its "public availability" criterion, Commerce stated a finding that the

---

[2] Commerce also indicated that Allied Pacific and Yelin reported using mostly white shrimp and that the Devi ranged data it used pertained to that species, while the SEAI data may have pertained to black tiger shrimp.  *Final Results of Redetermination Pursuant to Ct. Remand* 9, 21 (May 21, 2009) ("*Second Remand Redetermination*").  The court does not find persuasive the Department's reasoning on the issue of the species of the shrimp.  Commerce asserts that the value of shrimp depends on the species and that "[t]his is significant because the shrimp size is determined by the species, and shrimp size impacts the number of shrimp sold per kilogram." *Id.* at 9.  Because the Department did not state a finding that the species of shrimp

(continued...)

SEAI data were not publicly available and that the Devi ranged data, in contrast, were made

available to the public in the companion Indian antidumping proceeding.  Second Remand

Redetermination 9-10.  The record supports the finding that the Devi ranged data were made

publicly available, and there is some record evidence to support a finding that the SEAI data are

not broadly available to the public.  The record indicates, for example, that Commerce was

unable to obtain copies of the SEAI circulars directly from SEAI.  *See* Second Remand

Redetermination 21, 25 (citing *Mem. from Program Manager, Office IX, to The File* 2 (June 28,

2004) (Admin. R. Doc. No. 510)); *Allied Pacific I*, 30 CIT at 747, 759-60, 435 F. Supp. 2d

at 1305, 1315-16.  Nevertheless, the record also establishes that the plaintiffs, at a time prior to

the Department's inquiries to SEAI, were able to obtain the circulars from SEAI.  *See Allied

Pacific I*, 30 CIT at 744-45, 435 F. Supp. 2d 1303.  In any event, the court sees no need to reach

the question of whether substantial evidence supported a finding that the SEAI data are not

publicly available or less publicly available than the Devi ranged data.  Even if the two data

sources were considered equally available to the public, the Department would be justified in

giving more weight to the deficiencies it identified with respect to count size as presented in the

SEAI circulars than to the issue of whether the SEAI data are publicly available.  Commerce

itself concluded that even had it been able to obtain directly from SEAI the documents it had

sought, it still would choose the Devi ranged data over the SEAI data on grounds of accuracy.

Second Remand Redetermination 22.

---

[2](...continued)
has a significant effect on price that would not be accounted for by its selection of count-size-
specific surrogate values, the Department has not explained adequately why it accorded
significance to the question of the species reported in the SEAI data.

In applying its "broad market average" criterion, the Department acknowledged that the ranged Devi data pertained only to a single purchaser, unlike the SEAI and ACC data.  *Id.* at 10.  As a countervailing consideration, Commerce did not find the SEAI data to be sufficiently complete, observing that the SEAI data "lack any information regarding the volume, value and per-unit price of transactions considered in determining average prices" and that "the data could potentially be based upon a handful of transactions."  *Id.*  Commerce cited record information showing that Devi purchased a total of 255,068.5 kilograms of raw white shrimp at a value of 38,974,776 Indian rupees, which Commerce considered to be a sufficiently broad average when viewed against the SEAI data, with which Commerce found significant shortcomings.  Second Remand Redetermination 11.

In discussing its contemporaneity criterion, Commerce noted that the Devi ranged data pertained to the period October 1, 2002 to September 30, 2003, which encompassed all of the period of investigation April 1, 2003 to September 30, 2003.  *Id.* at 11.  With respect to exclusivity from taxes, Commerce found, based on data submitted by Devi in the Indian investigation, that the prices in the ranged Devi ranged data included a 0.5% tax and, in response, adjusted the prices downward by 0.5%.[3]  *Id.* at 31.

Upon considering the Department's analysis of the four data sets in its entirety, the court concludes that Commerce based its choice of the Devi ranged data on adequate findings, which were supported by substantial record evidence.  Plaintiffs raise various arguments in support of the contrary position, maintaining that Commerce erred in not selecting instead the SEAI data or

---

[3] Commerce explained that it could adjust the SEAI prices for Andhra Pradesh by the 0.5% rate set forth by Devi as the tax rate for that region but could not adjust the prices for Tamil Nadu as it did not have the tax rate for the region.  Second Remand Redetermination 31.

some combination of the SEAI and Devi ranged data.  Allied Pacific Comments 4-24; Yelin

Comments 18-26.  Both make the general argument that substantial record evidence does not

support Commerce's findings that the Devi ranged data are the best available information on the

grounds of specificity, public availability, representativeness of a broad market average,

contemporaneity, tax exclusiveness, and reliability.  Allied Pacific Comments 4-24; Yelin

Comments 4-26.  However, plaintiffs' comment submissions fail to make the case that the choice

of the Devi ranged data exceeded the discretion that Congress granted to Commerce for the

choice of "the best available information" regarding the raw shrimp factor of production.  *See*

19 U.S.C. § 1677b(c)(1) (2000).  The record supports the findings essential to Commerce's

choice of the Devi ranged data, in particular, Commerce's findings that the SEAI data suffer in

comparison to the Devi ranged data with respect to count size as well as the presence of

background information on volumes and per-unit prices from which Commerce could ascertain

how the data were derived.  Commerce justifiably placed considerable weight on those findings,

which directly pertain to the accuracy and reliability of the resulting surrogate values.  Commerce

reasonably placed more importance on its factor of specificity to the input than on its other

factors.

        Both plaintiffs object that the per-unit prices in the Devi ranged data were ranged in such

a way that the prices Devi reported exceeded the 10% deviation from actual values that is

allowed by the Department's regulations and may have deviated by as much as 34% from the

actual prices.  Allied Pacific Comments 4-8; Yelin Comments 4-17.  Plaintiffs base their

objection on a pattern discernible in the Devi ranged data.  Allied Pacific Comments 6; Yelin

Comments 10.  Describing this pattern in post-oral-argument briefing, they state that "the

reported ranged per unit price . . . is either exactly equal to 110% of the result determined by

dividing the ranged total quantity . . . into the ranged total value . . . (or else varies by no more

than an additional 1 percentage point)." Pls. Post-Argument Submission 3.  According to

plaintiffs, "it is mathematically irrefutable that Devi's reported ranged per unit price, in 168 out

of 177 reported instances, equaled ranged total quantity divided into ranged total value multiplied

by 110%." *Id.*  Plaintiffs conclude from this pattern that "substantial evidence does not support

the Commerce Department's claim that Devi applied the Department's ranging regulation in

19 C.F.R. § 351.304(c)(1) in a manner that did not distort its publicly reported, ranged per unit

prices by more than 10 percent from the actual per unit prices that Devi paid." *Id.* at 1.  Plaintiffs

add that "[t]he factual finding that a seemingly random ranging of +/- 10% from the actual per

unit price would virtually always result in the exact same per unit price as using a triple ranging

methodology defies logic and common sense." *Id.* at 4.  Plaintiffs posit that ranging of quantity

and ranging of value, followed by ranging of the quotient by 10%, could produce per-unit prices

that vary from the actual per-unit prices by as much as 34%.  Allied Pacific Comments 5; Yelin

Comments 9-10.  Yelin gives as a hypothetical example a ranged purchased quantity of 91.7

kilograms for which the actual quantity could have been 102 kilograms, a value of 29,816 Indian

rupees that could have been 27,105 Indian rupees prior to ranging, and a quotient that was ranged

upward by 10%, resulting in a per-unit price 358 Indian rupees/kilogram, which is 34% higher

than what could have been the actual per-unit price of 266 Indian rupees/kilogram.  Yelin

Comments 9-10.

Under § 351.304(c)(1) of the Department's regulations, Devi was required to submit "a

summary of the bracketed [*i.e.*, business proprietary] information in sufficient detail to permit a

reasonable understanding of the substance of the information."  19 C.F.R. § 351.304(c)(1)

(2004).  The regulation provides that "[g]enerally, numerical data will be considered adequately

summarized if grouped or presented in terms of indices or figures within 10 percent of the actual

figure."  *Id.*

   The underlying premise of plaintiffs' argument is that Devi failed to ensure that its

ranged, per-unit values were within 10% of the actual per-unit figures.  Commerce did not so

find, and instead, on the basis of § 351.304(c)(1) and on the absence of any record evidence "that

the Department found any errors with respect to Devi's ranged data in the companion Indian

investigation," Second Remand Redetermination 32 n.7, Commerce concluded that "in the worst

case 'doomsday' scenario, any ranged per-unit number could differ from the business proprietary

number by no more than 10%."  *Id.* at 32.  Commerce reached that conclusion "[a]part from our

initial concerns about the ranging of the data in the *Final Determination* and [the First Remand

Redetermination], which the Court rejected."  *Id.* at 7.  In *Allied Pacific II*, the court rejected

Commerce's finding in the First Remand Redetermination that the prices in the ranged Devi data

may deviate from the actual data by much more than 10%.  *Allied Pacific II*, 32 CIT at __, 587 F.

Supp. 2d at 1348-49.  Consistent with the court's conclusion in *Allied Pacific II*, Commerce now

concludes that the per-unit prices in the ranged Devi data do not differ from the actual numbers

by more than 10%.  Second Remand Redetermination 32.  Plaintiffs argue that Commerce

reached this conclusion without relying on actual record evidence, relying instead solely on the

existence of the regulation.  Pls. Post-Argument Submission 3.  In this they are not entirely

correct.  The cover letter to the Devi ranged data is itself record evidence on the issue of whether

Devi performed proper ranging of the per-unit values, stating that "[p]ursuant to 19 C.F.R.

§ 351.304(c)[,] we note that all business proprietary information contained in the business

proprietary version of the response has been deleted or ranged +/- 10 percent in this public

version of the response." *Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP*

*to Sec'y of Commerce* 1117 (Sept. 8, 2004) (Admin. R. Doc. No. 709) ("*Second Surrogate Value*

*Submission*") (providing a copy of Devi's response to the Department's supplemental Section D

questionnaire).  Plaintiffs' argument is correct only to the extent that the record does not contain

evidence conclusively establishing that Devi's ranged per-unit values did not exceed the actual

values by more than 10%.  But contrary to plaintiffs' argument, neither does the record establish

that Devi failed to comply with the 10% maximum standard for ranging that § 351.304(c)(1)

imposes on numerical data.

        Plaintiffs also are correct that the Devi ranged data used by the Department to calculate

the surrogate values for raw shrimp exhibited, with very few exceptions, the 110% pattern.  But

the mere fact that in almost all instances Devi presented per-unit values for its purchases of raw,

head-on white shrimp that were an increase of ten percent over the quotient of the reported

ranged quantity and value figures is not substantial evidence that the per-unit values failed to

conform to the ranging standard.  By any of a countless number of ranging methods, Devi could

have ensured that the ranging it performed on the quantity and value elements resulted in per-unit

quotients that achieved per-unit values within 10% of the actual figures.  As an extreme example,

Devi could have ranged both the value and quantity, either upward or downward, by the same

percentage before raising the per-unit (Indian rupees/kilogram) quotient by 10%, thus barely

achieving compliance with the 10% ranging requirement.  Alternatively, Devi could have

ensured that the ranging of the value and the quantity resulted in a per-unit quotient that was less

than the actual per-unit quotient, such that increasing the quotient by 10% would always achieve compliance with a margin to spare.

Because the record lacks evidence establishing that Devi failed to comply with the regulatory requirement on ranging found in 19 C.F.R. § 351.304(c)(1), Commerce certainly was not *required* to reach the finding of noncompliance that plaintiffs advocate.  Moreover, on the state of the record, which included Devi's certification of compliance with the ranging requirement, it was permissible for Commerce to rely on a presumption that Devi's submission of data in the parallel Indian investigation complied with that requirement.  Commerce quite reasonably could expect that Devi, like any party to an antidumping investigation, would have endeavored to comply with the ranging standard and would have had every incentive to do so. As would any such party, Devi would have risked adverse consequences in the parallel Indian investigation were its ranging to be impermissible–a fact that the business confidential version of the data, which necessarily would have been on the record in that investigation, readily would have revealed to Commerce in that other proceeding.  On this record, which contains only the public version of the Devi data, the court must reject plaintiffs' comment objecting to the Department's use of the Devi data on grounds of alleged improper ranging.

Plaintiffs argue in the alternative that even if Devi's per-unit values did not exceed the actual values by more than 10%, that degree of inaccuracy is unacceptable and should not receive deference because Commerce, in a determination in another proceeding, upheld by the Court of International Trade, declined to use ranged data as facts otherwise available because of unreliability due to the ranging.  Pls. Post-Argument Submission 8-9 (citing *Allegheny Ludlum Corp. v. United States*, 27 CIT 1461, 1467-68 (2003)).  This argument is unpersuasive.

Commerce's decision to use the Devi ranged data must be reviewed on the record of this remand

proceeding, in which Commerce was required to compare the Devi ranged data with SEAI data.

Neither set of data is ideal, but Commerce's findings pertaining to the inadequacies of the SEAI

data when compared with the Devi ranged data are supported by substantial record evidence and

must be upheld by the court.  Commerce's reasons for rejecting ranged data in another

proceeding, in a different context, do not support an argument that Commerce was not permitted

to use ranged data here.

  Yelin takes issue with the Department's conclusion that the Devi ranged data are superior

to the Nekkanti ranged data, arguing that the court should remand the decision "with an

instruction that the Department disregard both the Nekkanti ranged data and the Devi ranged data

because it has failed to provide a reasoned explanation as to why Nekkanti's ranging process

results in a greater deviation from its actual prices than does Devi's ranging process."  Yelin

Comments 17.  According to Yelin, the Department need only have calculated a per-unit price

from Nekkanti's ranged prices and quantities to bring the Nekkanti ranged data "to the exact

same point and exact same extent of deviation as Devi's ranged data before Devi added the third

ranging step to the product of dividing its ranged quantity into its ranged total amount paid."  *Id.*

at 16.  The court finds no merit in this argument.  First, as Yelin itself acknowledges, Nekkanti

ranged its count sizes while Devi did not.  *See id.*  Second, Nekkanti did not provide ranged per-

unit prices.  *Id.*  Had the Department simply calculated per-unit prices from Nekkanti's ranged

prices and quantities, as Yelin suggests it could have done, the quotients could not be presumed

to be the equivalent, with respect to accuracy, of the per-unit prices in the Devi ranged per-unit

data, which the Department permissibly found to be within ten percent of the actual figures.

Allied Pacific argues that a data set reflecting shrimp prices at different count sizes

should show a consistent pattern of higher prices for lower count sizes (*i.e.*, larger shrimp) and

highlights certain instances in which the Devi ranged data deviate from that pattern.  Allied

Pacific Comments 7-8, Attach. 2.  The United States, in its response, states that Allied Pacific

failed to exhaust its administrative remedies with respect to this claim and then, nonetheless,

explains that many factors could have affected the price, including, *e.g.*, purchases made from

different sources and through different commercial arrangements.  Def.'s Resp. to Pls.' Remand

Comments 24-25 ("Def. Resp.").  Neither Allied Pacific nor Yelin appear to have raised this

issue in their comments before Commerce.  *See Letter from Grunfeld, Desiderio, Lebowitz,*

*Silverman & Klestadt LLP to Sec'y of Commerce* (Apr. 24, 2009) (Second Remand Admin. R.

Doc. No. 11) ("*Allied Pacific Comments on Draft*"); *Letter from Akin Gump Strauss Hauer &*

*Feld LLP to Sec'y of Commerce* (Apr. 24, 2009) (Second Remand Admin. R. Doc. No. 12)

("*Yelin Comments on Draft*").  Consequently, Commerce did not have the opportunity to respond

to the argument in its Second Remand Redetermination.

Because Allied Pacific had the opportunity to raise, in comments to Commerce on the

Second Remand Redetermination, its argument concerning anomalous pricing for count sizes but

did not do so, the court does not have the benefit of a response to that argument in the Second

Remand Redetermination.  The question of exhaustion aside, the court is not convinced by the

argument.  Although count size unquestionably is important to the value of shrimp, the court

lacks a basis on this record to conclude that Commerce was required to reject as invalid or

unreliable a set of data in which, in some instances, higher per-kilogram count sizes are valued at

amounts above those for certain lower count sizes.

Plaintiffs also challenge the Department's finding in the Second Remand Redetermination that the Devi ranged data represent a broad market average, emphasizing that the SEAI data represent prices for two regions while the Devi ranged data represent prices for a single company in a single region.  Allied Pacific Comments 16-19; Yelin Comments 22-23. According to Allied Pacific, the Department's citing of the lack of information as to the volume of transactions represented by the SEAI circulars relies on conjecture and is not a sound basis upon which to conclude that the Devi ranged data are superior.  Allied Pacific Comments 16-17.

Commerce explained that in considering which data represent best a broad market average, "the ultimate goal is to find the most representative and reliable surrogate value source" and that the analysis is not limited to "purely geographical considerations."  Second Remand Redetermination 27.  Further, Commerce emphasized that it was unable to determine how SEAI prices were averaged, how many transactions the prices encompassed, or whether the data were subject to any scrutiny or review.  *Id.*  Comparing the SEAI data with Devi's ranged data, Commerce concluded that because Devi reported the total volume and value, Commerce could conclude with a degree of confidence that the data were representative.  *Id.* at 27-28.  The record evidence is sufficient to support Commerce's findings that the SEAI prices, when compared to the Devi ranged data, lack supporting data on total value and volume and have deficiencies with respect to count size.  Those findings justify as reasonable the Department's choice of the Devi ranged data over the SEAI data, even though the SEAI data would appear to be a broader market average with respect to geography and numbers of producers in India.

With respect to the contemporaneity criterion, Allied Pacific objects that the Devi ranged data are overly inclusive because they cover the six months prior to the period of investigation as

well as the period of investigation.  Allied Pacific Comments 20; *see* Yelin Comments 23-24.

Allied Pacific further argues that it is unclear whether Devi made purchases of white shrimp

within the period of investigation and that there is a 50% chance that the white shrimp purchases

occurred outside of the period of investigation.  Allied Pacific Comments 20.  Allied Pacific

maintains that the SEAI data are perfectly contemporaneous with the period of investigation.  *Id.*

With regard to contemporaneity, Commerce found that the Devi ranged data are

contemporaneous with the period of investigation as the data cover the period October 1, 2002

through September 30, 2003 and the period of investigation is April 1, 2003 through

September 30, 2003.  Second Remand Redetermination 11.  Yelin notes that Commerce does not

address the contemporaneity of the SEAI data.  *See* Yelin Comments 23-24.

        Plaintiffs are correct that the Devi ranged data are over-inclusive, as these data cover a

period preceding the period of investigation as well as the period of investigation itself.

Although not *perfectly* contemporaneous, the Devi ranged data overlapped the entire period of

investigation.  The record also reveals that the SEAI data are incomplete due to missing circulars,

and as a result some of the SEAI data do not cover the entire period of investigation.  *See Letter*

*from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to Sec'y of Commerce* 7-8, 21-28

(May 21, 2004) (Admin. R. Doc. No. 267) ("*First Surrogate Value Submission*").  On the record

considered as a whole, the court cannot conclude that Commerce exceeded its discretion in

choosing the Devi ranged data even though those data pertained to a period extending to a time

prior to the period of investigation.

        Finally, Yelin comments that Commerce, although citing verification of Devi's data in

the companion Indian investigation as a reason for concluding that the Devi data are reliable, did

not actually verify the Devi data in ranged form; as a result, according to Yelin, "[t]his

verification has no relevance to the accuracy or reliability of the ranged data, which could vary by

as much as 34 percent from the actual prices."  Yelin Comments 25.  This argument fails because

its premise is that the Devi ranged data did not comply with the Departments' ranging standard, a

premise that is unsound for the reasons the court previously discussed.

         In summary, Commerce's choice of the Devi ranged data is based on adequate findings

supported by substantial record evidence and is within the Department's discretion afforded by

19 U.S.C. § 1677b(c).  Commerce permissibly concluded that the ACC data lack critical indicia

of reliability and that the SEAI data are inferior to the Devi ranged data in material respects

important to the valuation of the specific raw shrimp input, most particularly count size and

completeness.  The court must affirm the Department's choice.

         B.  Commerce's Redetermination of the Surrogate Value for Labor Is Affirmed

         In response to the court's order in *Allied Pacific II*, 32 CIT at __, 587 F. Supp. 2d at 1363,

Commerce redetermined a surrogate value of $0.05 per hour for labor.  Second Remand

Redetermination 3.  Commerce based its determination to apply this labor rate on its finding that

the data supporting the rate were specific to the Indian seafood industry, unlike the other data set

on the record, which Commerce found to pertain to labor rates across the various industries in

India.  *Id.* at 13-17.  Substantial record evidence supports the Department's findings.

         Neither of the plaintiffs commented on the redetermination of the surrogate value for

labor before Commerce or in the submissions subsequently made to the court.  *See id.* at 37;

Allied Pacific Comments; Yelin Comments.  Under these circumstances, the court reasonably

may infer that the parties concur in the Second Remand Redetermination.  *See Wuhan Bee*

*Healthy Co. v. United States*, 32 CIT __, __, Slip Op. 08-61, at 12 (May 29, 2008) ("Under such

circumstances, Commerce 'may well be entitled to assume that the silent party has decided, on

reflection, that it concurs in the agency's [remand results],' and the court will uphold the parties'

concurrence." (quoting *AL Tech Specialty Steel Corp. v. United States*, 29 CIT 276, 285, 366 F.

Supp. 2d 1236, 1245 (2005))).

     In the Second Remand Redetermination, Commerce stated its disagreement with the

court's holding that 19 C.F.R. § 351.408(c)(3) violates 19 U.S.C. § 1677b(c) but nonetheless

redetermined the labor rate "without regard to 19 C.F.R. § 351.408(c)(3)," as required by *Allied*

*Pacific II*, 32 CIT at __, 587 F. Supp. 2d at 1363.  Second Remand Redetermination 13 & n.2,

16.  Since the submission of the Second Remand Redetermination, the Court of Appeals for the

Federal Circuit has resolved the issue raised by the Department's objection by holding that

19 C.F.R. § 351.408(c)(3) violates 19 U.S.C. § 1677b(c) insofar as it "improperly requires using

data from both economically comparable and economically dissimilar countries, and it

improperly uses data from both countries that produce comparable merchandise and countries

that do not."  *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1372 (Fed. Cir. 2010).

### III. CONCLUSION

     The Department's redetermined surrogate value for the raw shrimp input complies with

the court's remand order and is in accordance with law.  The Department's redetermined

surrogate value for labor is affirmed because no party objects to that determination.  The court

will enter judgment accordingly.

                                                  /s/ Timothy C. Stanceu
                                                  Timothy C. Stanceu
                                                  Judge

Dated: July 29, 2010
       New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ALLIED PACIFIC FOOD (DALIAN) CO. LTD., ALLIED PACIFIC (H.K.) CO., LTD., KING ROYAL INVESTMENTS, LTD., ALLIED PACIFIC AQUATIC PRODUCTS (ZHANJIANG) CO. LTD., and ALLIED PACIFIC AQUATIC PRODUCTS (ZHONGSHAN) CO. LTD.,** | |
| Plaintiffs, | **Before: Timothy C. Stanceu, Judge** |
| v. | **Consol. Court No. 05-00056** |
| **UNITED STATES,** | |
| Defendant. | |

### JUDGMENT

Upon review of the Final Results of Redetermination Pursuant to Court Remand (May 21, 2009) ("Second Remand Redetermination"), plaintiffs' and defendant's comments thereto, and all other filings and proceedings herein, after due deliberation, and in conformity with the Opinion issued this date, it is hereby

**ORDERED** that the Second Remand Redetermination be, and hereby is, AFFIRMED; and it is further

**ORDERED** that the entries at issue in this action and subject to *Notice of Amended Final Determination of Sales at Less Than Fair Value & Antidumping Duty Order: Certain Frozen Warmwater Shrimp From the People's Republic of China*, 70 Fed. Reg. 5149 (Feb. 1, 2005) ("*Amended Final Determination & Order*"), be liquidated in accordance with the final court decision in this action.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: July 29, 2010
          New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                          Deputy Clerk